In the Matter of JEAN K. LE FAVOUR, Respondent, v WILLIAM KOCH, Appellant.—Mikoll, J.

Petitioner and respondent were divorced in 1982. The original divorce agreement provided that petitioner was to have physical custody of the two children of the marriage, Steven, born May 12, 1977, and Matthew, born January 19, 1979. Petitioner married again in August 1982 to Steven Le Favour, who was in the United States Navy and stationed in Ledyard, Connecticut. The children lived with petitioner and her new husband in Connecticut and respondent remained in Schenectady County, where he resided in his parents' home.

In light of Le Favour's impending transfer to Saratoga County, an area near respondent's home, petitioner and respondent agreed that they would share joint custody of the two children. A court order so provided. Respondent would have the children during the school year and petitioner would

have them during each summer. The children moved in with respondent and his parents at the beginning of the 1983 school year.

In September 1983, the children's maternal grandparents, Mary and Robert Phillips, noticed during a visit at their home that the boys appeared unhappy and were not their usual selves. The grandparents observed that each boy was handling his private parts. Asked where they learned that, the boys responded that "Daddy Bill does that all the time". In October 1983, Steven told Mrs. Phillips that respondent had been touching Steven's private parts and had hurt him. Matthew replied similarly to her subsequent inquiries. The Phillipses then contacted the boys' Law Guardian, who advised them to consult a lawyer. The lawyer advised them to arrange for a psychological examination of the children. The Phillipses then contacted Dr. Karowe, a psychologist.

On November 12, 1983, when petitioner was returning the boys to respondent's residence after a weekend visit at the Phillipses, Steven refused to leave the car. He clung to petitioner for about 20 minutes, crying hysterically, and had to be taken from the car forcibly by respondent. Matthew was also crying at the time.

Steven and Matthew spent Thanksgiving 1983 with the Phillipses. The night before, the Phillipses took the children to see Dr. Karowe. The next day, they went to petitioner's home in Connecticut where the boys were "deliriously happy" and "like two different kids". At that time, Steven told petitioner that he did not want to return to his father. The boys told of other acts of sexual abuse by respondent. Petitioner did not return the children to respondent but enrolled them in school in Connecticut. When respondent telephoned her residence, Steven heard his father's voice on the phone and responded with a look of terror.

Petitioner filed a petition for custody of the children on December 1, 1983. Respondent cross-petitioned for enforcement of the prior order of joint custody, and against petitioner and her parents for violation of that order. Respondent's parents subsequently petitioned for custody of the children. Family Court received testimony concerning the parties' petitions but did not entertain the petition of the paternal grandparents.

The children were not called as witnesses in these proceedings, nor did Family Court interview them in camera. A child protective caseworker and a police investigator testified that

they had interviewed Steven and that Steven demonstrated for each of them, separately, using anatomical dolls, what had been done to him and his brother. In each case, Steven described instances of oral, anal and genital contact, and said that the various acts of sodomy had been perpetrated on him by respondent, by the paternal grandparents and by Michelle Pagano, respondent's girlfriend. Matthew remained silent on the subject.

Dr. William Long, a psychologist, testified that he had also interviewed both Matthew and Steven. Matthew would not talk. Steven related the allegations of sexual abuse once again. He told what respondent did to him and demonstrated the acts to Dr. Long. Dr. Long concluded that Steven's story was worthy of belief. He pointed to the fact that Steven was able not only to relate the story consistently, but to describe it behaviorally in a conversation. Dr. Long tested the children educationally and stated that, in his opinion, the children were not bright enough to fabricate this sort of a story, especially since such sexual happenings were not within their realms of experience. He concluded that it would be "nearly impossible" for Steven to have related this story if it had not been true.

The accused persons all denied the truth of the children's allegations. Respondent submitted evidence as to petitioner's unfitness as a mother. He also called psychologists who opined that respondent and his parents would not be likely to have sexually abused the children. There was also testimony by Mrs. Phillips that the children were living with the Le Favours in Idaho and appear happier than ever. She stated that the Le Favours live in a spacious three-bedroom house in a nice neighborhood, that the children are well cared for, that they revere their stepfather and that petitioner recently was offered a full-time job as a teacher's aide.

Family Court granted petitioner's application for custody and denied respondent's petition in all respects. Respondent was also denied any visitation with the children until such time as respondent and the children successfully complete a course of therapy and counseling. This appeal by respondent ensued.

There should be an affirmance. Respondent's first contention, that Family Court erred by failing to conduct a preliminary examination to determine the infants' capacity to testify, is without merit. Conduct of a preliminary examination of an infant may be required to test his capacity to testify. However,

neither child testified here, nor were they interviewed in camera by Family Court.

The thrust of respondent's argument appears to be that since Family Court credited the testimony of witnesses who interviewed Steven, it was, in effect, crediting the actual statements of Steven himself and, thus, receiving hearsay. Respondent moved at the hearing to strike out all of the testimony relating to the interviews with the children as hearsay. Family Court properly denied the application.

Child protective proceedings (abuse and neglect) are brought under Family Court Act article 10. Family Court Act § 1046 (a) (vi) provides a hearsay exception as to prior statements made by children relating to allegations of abuse and neglect. However, the instant proceeding was commenced according to Domestic Relations Law §§ 70 and 240 and Family Court Act article 6. Nevertheless, the gravamen of this case involves child abuse, and the question that arises is whether the hearsay exception provided for in Family Court Act § 1046 can be applied in this situation.

Family Court Act § 1046 (a) (vi) was amended in 1985 (L 1985, ch 724) to ease the formerly strict requirement that children's hearsay statements regarding abuse be corroborated. Corroboration is still required in order to make factual findings of abuse or neglect, but the section now provides, in pertinent part, that: "Any other evidence tending to support the reliability of the previous statements, including, but not limited to the types of evidence defined in this subdivision shall be sufficient corroboration. The testimony of the child shall not be necessary to make a fact-finding of abuse or neglect" (Family Ct Act § 1046 [a] [vi]). This amendment signifies the intent of the Legislature to enable courts to deal more effectively with various forms of child abuse and neglect and to protect children from such conduct. In the case before this court, petitioner seeks to protect her children from child abuse, the very object of the legislation. The harm sought to be remedied is the same. We therefore conclude that Family Court Act § 1046 (a) (vi), as amended, is applicable to this proceeding.

Therefore, Family Court properly credited the testimony regarding the out-of-court statements of Steven and Matthew. There was ample evidence that the abuse did occur as alleged and the corroboration required by the statutory provision is present. Both Matthew and Steven were obviously terrified of their father after the events occurred. There was evidence of

their personality changes and the expert testimony of Dr. Long explained in detail why the boys' story of abuse was, in his opinion, truthful.

There is no merit to respondent's claim that the determination of Family Court was against the weight of the evidence. The evidence was clearly sufficient to permit Family Court to modify the prior custody order. The proof established that the best interests of the children was to award full custody to petitioner (see, Domestic Relations Law § 70; *Eschbach v Eschbach,* 56 NY2d 167, 171).

Order affirmed, without costs. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.