■ In the Matter of GARY J., Respondent, v COLLEEN L., Appellant. [732 NYS2d 731] —Carpinello, J. Appeal from an order of the Family Court of Columbia County (Czajka, J.), entered April 14, 2000, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, to modify a prior order of custody.

The parties, who separated in October 1994 and divorced in May 1996, are the parents of three children, only two of whom are at issue in this proceeding, Gary (born in July 1990) and Nicholas (born in September 1994).[1] Following their divorce, they shared joint custody, with respondent having primary physical custody and petitioner having visitation on alternating weekends and certain weekday evenings. In August 1999, amid allegations that Gary was sexually molested by his stepfather (respondent's current husband), physical custody of

---

1. The parties also have a daughter, Amanda (born in 1985), who is estranged from petitioner and lives with her maternal grandmother even though respondent has primary physical custody of her.

the boys was transferred to petitioner by temporary order. Although this proceeding seeking modification of the prior custody order contained three grounds in the petition—the alleged sexual abuse of Gary, alleged domestic violence in respondent's household and respondent's alleged educational neglect of Gary—the fact-finding hearing that ensued focused primarily on the allegations of sexual abuse. Following the hearing, Family Court rendered a decision finding that petitioner sustained his burden of proving that the child was sexually abused by his stepfather. The court accordingly granted petitioner sole custody, with supervised visitation to respondent. This appeal by respondent, joined in by the Law Guardian, ensued.

Suffice it to say, the factual and expert testimony on the issue of sexual abuse was conflicting, compelling this Court to observe that this is yet another case where "the law cannot [always] provide a perfect solution" (*Matter of Frize v Frize*, 266 AD2d 753, 753-754; *see, Hanna v Hanna*, 267 AD2d 903, *lv denied* 94 NY2d 943). However, one impression can readily be made upon review of the record, namely, that both parties have demonstrated significant parental weaknesses over the years. Petitioner, for his part, was not meaningfully involved in his children's daily lives following the breakup of the marriage and, upon gaining temporary custody of the boys, shuffled them off to his parents on a regular basis. In addition, he has shown a demonstrated preference for Gary over his other two children. These factors have made the change in custody particularly difficult for Nicholas, who was only five years old when the transition took place and very much emotionally bonded to respondent and his stepfather, they being his true psychological parents from birth. Moreover, while Gary had expressed a strong desire to live with petitioner as of August 1999, he has apparently grown resentful about all the time that he instead spends at the home of his paternal grandparents.

Respondent, for her part, was the primary physical custodian of the children when Gary missed 32 days of kindergarten, 22 days of first grade, 30 days of second grade and 36 days of his first attempt at third grade. Moreover, there have been at least three significant incidents of domestic violence in her current household. What makes this case so disturbing, and of course so difficult to resolve, however, are the allegations of sexual abuse concerning Gary and the utter disagreement among the experts and investigative agencies involved in this case concerning their accuracy.

To be sure, substantiated allegations that a child has been subjected to sexual abuse in the custodial parent's home would constitute a sufficient change of circumstances warranting modification of an existing custody arrangement (*see, e.g., Matter of Quick v Quick*, 227 AD2d 666; *Matter of Tracy V. v Donald W.*, 220 AD2d 888; *Matter of Le Favour v Koch*, 124 AD2d 903, *lv denied* 69 NY2d 605). Thus, the decisive issue is whether Family Court's factual determination that Gary was sexually abused by his stepfather, which was based on an assessment of witness credibility, has a sound and substantial basis in the record (*see, Matter of Bennett v Davis*, 277 AD2d 517, 518; *Hanna v Hanna, supra*, at 904). We find that it does.

The record reveals that Gary first disclosed the alleged abuse to petitioner's sister and then to petitioner himself. The child was interviewed on two occasions by a State Police investigator. At the second interview, however, he recanted the allegations. No criminal charges were filed; rather, a report was issued stating that the allegations were unfounded. Apparently, the Greene County Department of Social Services also investigated the matter and similarly concluded that the allegations were unfounded.

The child's stepfather took the stand at the hearing and denied the allegations. The child did not testify, either at the hearing or in camera. Kenneth Russell, a certified social worker who had four counseling sessions with Gary, testified that the sexual abuse came up in these sessions, at which time the child revealed to him that "he was touched * * * in the front and in the back, on a couple of occasions, and that he had done some touching in the back, as [the child] put it, on * * * one occasion." Gary told Russell that he "was telling the truth [to the police about the sexual abuse] and everyone started getting upset so * * * he withdrew his allegations, he said it didn't happen and he didn't want—he didn't want to get his mom and [stepfather] in trouble." Russell made no opinions about the veracity of the child's allegations. Two other experts who testified at the hearing did and each gave a different opinion on the issue of whether Gary had in fact been sexually abused.

Patricia Foscato, a social worker who performed a sexual abuse evaluation of Gary in September 1999, opined within a reasonable degree of certainty that the child was sexually abused by his stepfather. Her opinion was based on two sessions with the child where he, in words and conduct, convinced her that he was indeed sexually abused. Respondent contends that Foscato's testimony was "incredible and contrived." According to respondent, Family Court should have instead

credited the opinions of Craig Lennon, the court-appointed psychologist who evaluated the family to address the "custody dilemma."

Lennon, who did not conduct a sexual abuse validation and indicated in a written report to Family Court that he was "not prepared to make any definitive conclusions [about Gary's allegations]," nevertheless remarked in the report and testified at the hearing that the child's recantation of the sexual abuse allegations appeared to be more credible than his original allegations of abuse. Lennon opined that Gary was "a very highly suggestible child" and that it was possible that someone "coached" him to make the allegations. Lennon was questioned extensively about his opinions, particularly by Family Court, but was unable to adequately support them with a specific example pertaining to the child.[2] Moreover, Lennon further acknowledged that one basis of his opinion that the child was susceptible to suggestibility was his assumption (incorrect as it turns out) that petitioner's sister, when originally questioning the child about being sexually abused, suggested *only* his stepfather as being the perpetrator. In actuality, the stepfather was one of many individuals brought up by petitioner's sister when attempting to ascertain from the child who abused him, a fact which Lennon agreed would affect his opinion about whether the allegation was false or not.

In rendering its decision in this matter, Family Court discounted Lennon's testimony, which the court found to be internally inconsistent and inconsistent with certain undisputed facts, and gave "little weight" to his opinion that no sexual abuse took place. In contrast, the court found Foscato's opinions to be credible and consistent with the facts. Noting that Family Court had the opportunity to assess the substance of these experts' testimony, as well as their credibility on the stand, and that the court gave very specific and well-supported reasons for its resolution of the conflicting expert proof, we find no reason to overturn its resolution of credibility or its factual finding that the child was in fact sexually abused by his stepfather (*see, Matter of Krywanczyk v Krywanczyk*, 236 AD2d 746; *Matter of Swift v Swift*, 162 AD2d 784, 785). This being the case, the best interests of both children warranted the modification of custody.

---

2. Family Court repeatedly asked Lennon to give an example of the child's "susceptibility to suggestibility" and the only example that he finally came up with was the child's "willingness to tell that he has been touched [sexually by his stepfather], when he later said, that was a lie," reasoning that the court pointed out to Lennon was "circular."

Finally, assuming that the issue is preserved for our review, we find no merit to respondent's claim that Family Court was biased against her or that it prejudged the allegations of sexual abuse.

Mercure, J. P., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.