## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  January 12, 2017          521859
_____

In the Matter of ANDREA C.,
                    Respondent,

         v                              MEMORANDUM AND ORDER

DAVID B.,
                    Appellant.

(And Two Other Related Proceedings.)
_____

Calendar Date:  November 16, 2016

Before:  Egan Jr., J.P., Lynch, Rose, Clark and Aarons, JJ.

—————————

        Alena E. Van Tull, Binghamton, for appellant.

        Samuel D. Castellino, Big Flats, for respondent.

        Martha Lyons, Binghamton, attorney for the child.

—————————

Egan Jr., J.P.

        Appeal from an order of the Family Court of Broome County (Connerton, J.), entered September 30, 2015, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

        Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the divorced parents of a daughter (born in 2005).  In June 2007, the parties stipulated to an order granting them joint legal custody of the child with primary physical placement to the mother and specified visitation to the

father.[1]  Although the parties thereafter expanded the father's visitation schedule on their own accord and, together with the father's new wife, often shared family dinners together, a growing disagreement began brewing between the mother and the father with respect to, among other things, day care arrangements for the child, her participation in various summer or holiday camps and the individualized services that were provided to her.[2] The parties' differences came to a head in 2013 when the mother had the child evaluated for attention deficit hyperactivity disorder (hereinafter ADHD) and a recommendation was made that the child receive a combination of medication and counseling; the mother "was very interested in doing a trial of medication" while the father "was totally against doing any medication."

Insofar as is relevant here, the mother commenced the first of these proceedings in September 2014 seeking sole custody of the child — citing, among other things, the father's lack of cooperation and interference with the child's service providers. The father cross-petitioned for sole custody — asserting, among other things, that the mother lacked the ability to effectively manage the child's behavioral issues and placed the child on ADHD medication without his consent — and also filed a violation petition alleging that the mother failed to adhere to the visitation schedule set forth in the June 2007 order. A lengthy fact-finding hearing ensued, during the course of which testimony was received from, among others, numerous service providers, counselors and school officials. Following a Lincoln hearing, Family Court issued a comprehensive and well-reasoned decision detailing, among other things, the parties' respective parental strengths and shortcomings, their level of acknowledgment of and philosophical differences regarding the appropriate treatment governing their daughter's disabilities, their respective

---

[1]  The June 2007 order apparently was incorporated but not merged into the parties' 2009 judgment of divorce.

[2]  The child, who has certain learning disabilities and developmental delays, began receiving early intervention services as an infant and, as of the time of the hearing, had an individualized education plan.

abilities to engage and work in a cooperative fashion with the child's service providers, the quality of their respective home environments and their individual abilities to provide for their child's intellectual and emotional development. Upon due consideration thereof, Family Court awarded the mother sole legal and physical custody of the child with significant visitation to the father. This appeal by the father ensued.[3]

Initially, the father does not dispute that the marked deterioration in the parties' relationship and their corresponding inability and/or unwillingness to work with one another in a cooperative fashion for the sake of their child constitutes a change in circumstances for purposes of satisfying the mother's initial burden on her modification petition (see Matter of Rockhill v Kunzman, 141 AD3d 783, 784 [2016]). For those same reasons, there also is no question that joint legal custody no longer is feasible (see Matter of Zahuranec v Zahuranec, 132 AD3d 1175, 1176 [2015]). Hence, Family Court was tasked with fashioning a custodial arrangement that would best serve the child's interests. Upon reviewing the record as a whole and giving due consideration to all of the relevant factors, including "each parent's ability to furnish and maintain a suitable and stable home environment for the child, past performance, relative fitness, ability to guide and provide for the child's overall well-being and willingness to foster a positive relationship between the child and the other parent" (Matter of Bailey v Blair, 127 AD3d 1274, 1276 [2015] [internal quotation marks, brackets and citations omitted]; see Matter of Coleman v Millington, 140 AD3d 1245, 1247 [2016]), as well as the transcript of the Lincoln hearing (see Matter of Shokralla v Banks, 130 AD3d 1263, 1265 [2015]), we are satisfied that Family Court's decision to award sole legal and physical custody of the

---

[3] During the pendency of this appeal, the parties filed competing modification petitions, in addition to certain enforcement and violation petitions. By order entered August 17, 2016, Family Court, among other things, dismissed the respective modification petitions, declining to alter the custodial arrangement set forth in its September 2015 order. Accordingly, this appeal is not moot.

child to the mother and expansive visitation to the father is supported by a sound and substantial basis in the record.

Here, Family Court was faced with the difficult task of choosing between two loving but very different (and often obstinate) parents — each of whom possesses largely irreconcilable parenting philosophies (particularly with respect to their appreciation of and willingness to seek outside help with respect to their child's particular needs). According to the father, the mother lacks the intellectual capacity and coping skills to properly manage and resolve the child's behavioral issues, has effectively delegated her parental decision making to various third-party service providers and has demonstrated impaired parental judgment by excluding him from important decisions regarding the child's care and treatment. The mother, on the other hand, contends that the father refuses to accept the child's disabilities, does not support the recommended treatment for the child's diagnosed ADHD, is opposed to the child's enrollment in special education classes (preferring instead that she "act like a regular child") and has effectively abdicated his parental role by, among other things, failing to pursue needed services for the child — believing instead that he alone is capable of meeting her needs. Family Court, drawing upon its "superior vantage point of observing the demeanor of the witnesses who testified before it" (Matter of Ryan v Lewis, 135 AD3d 1135, 1137 [2016] [internal quotation marks and citation omitted]), largely credited the testimony of the mother — finding that the mother was "more aware of and involved with" the child's teachers and service providers, had made "thoughtful, rational[] decisions" with respect to the child's welfare and, on balance, was capable of providing "a greater continuity of care" for the child than the father (see Matter of Blagg v Downey, 132 AD3d 1078, 1080 [2015]). The court's findings in this regard are fully supported by the testimony of numerous service providers, who generally attested to the father's lack of involvement in, opposition to and/or disruptive behavior regarding their efforts to provide services to the child (see Matter of Virginia C. v Donald C., 114 AD3d 1032, 1034 [2014]). Although Family Court recognized the "important role" that the father played in the child's life, including providing necessary structure and discipline, it was, in the final analysis, the father's attitude,

demeanor and parenting style that prompted Family Court to award sole legal and physical custody to the mother — taking care to ensure that the father had frequent and meaningful access to the child and, further, that he was kept apprised of the child's medical and service providers and received appropriate notices and updates from the child's school. Given that Family Court had the opportunity to observe the parties and their respective witnesses firsthand over the course of the lengthy fact-finding hearing, and inasmuch as the court's findings are supported by a sound and substantial basis in the record, we discern no basis upon which to disturb the custodial arrangement fashioned by Family Court. The father's remaining contentions are either unpreserved for our review or have been examined and found to be lacking in merit.

Lynch, Rose, Clark and Aarons, JJ., concur.

ORDERED that the order is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court