■ In the Matter of DAVID ZZ., Respondent, v SUZANE A., Appellant. (And Another Related Proceeding.) [58 NYS3d 711]—

Egan Jr., J. Appeal from an order of the Family Court of Madison County (McDermott, J.), entered October 28, 2015, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2012). By order entered August 30, 2013 on consent, the parties were awarded joint legal custody of the child with primary physical placement to the mother and specified periods of parenting time to the father. In July 2014, the father commenced a modification proceeding seeking sole custody of the child and, in January 2015, the mother cross-petitioned for similar relief. Following a lengthy hearing, Family Court, among other things, granted the father's petition—finding that the father had established the requisite change in circumstances and, further, that the child's best interests warranted a change in custody. Accordingly, Family Court, in a detailed and well-reasoned decision, awarded sole legal and physical custody of the child to the father and liberal visitation to the mother. This appeal by the mother ensued.

We affirm. "The party petitioning to modify a custody order bears the burden of demonstrating first, that there has been a change in circumstances since the prior order and, then, if such a change occurred, that the best interests of the child would be served by a modification of that order" (*Matter of Smith v McMiller*, 149 AD3d 1186, 1187 [2017] [internal quotation marks, brackets and citations omitted]; *see Matter of William O. v John A.*, 148 AD3d 1258, 1259 [2017], *lv denied* 29 NY3d 908 [2017]). To that end, "[t]he requisite change in circumstances may be established where the record reflects that the relationship between the parents has deteriorated to the point where they simply cannot work together in a cooperative fashion for the good of their child[ ]" (*Matter of Gerber v Gerber*, 133 AD3d 1133, 1136 [2015] [internal quotation marks and citations omitted], *lv denied* 27 NY3d 902 [2016]; *see Matter of Cameron ZZ. Ashton B.*, 148 AD3d 1234, 1235 [2017]).

Here, the father testified—at length—that the mother repeatedly refuses to take his telephone calls, is unresponsive or delays in responding to his texts and/or emails and provides inadequate or incomplete notice of the child's medical appointments. The mother admitted that she rarely speaks with the father by phone, preferring instead to communicate with him via email or text messages and, in the affidavit filed in support of her cross petition, averred that—since the prior custody or-

der—she and the father had experienced "a complete breakdown in communication." Such proof, coupled with the numerous—and often contentious—emails between the parties that were entered into evidence at the hearing, establishes the requisite change in circumstances and provides ample support for Family Court's finding that "no effective communication is taking place" between the parties (*see e.g. Matter of Paul A. v Shaundell LL.*, 117 AD3d 1346, 1348 [2014], *lv dismissed and denied* 24 NY3d 937 [2014]). Having so concluded, we are left to consider whether, upon due consideration of all of the relevant factors, including "each parent's ability to furnish and maintain a suitable and stable home environment for the child, past performance, relative fitness, ability to guide and provide for the child's overall well-being and willingness to foster a positive relationship between the child and the other parent" (*Matter of Zahuranec v Zahuranec*, 132 AD3d 1175, 1176 [2015] [internal quotation marks and citations omitted]; *see Matter of Paul LL. v Tanya LL.*, 149 AD3d 1173, 1174 [2017]; *Matter of Smith v McMiller*, 149 AD3d at 1187), Family Court's award of sole legal and physical custody to the father is supported by a sound and substantial basis in the record.

As to the parties' respective work schedules and home environments, the father testified that he owns a property management company located less than one mile from his residence in the City of Watertown, Jefferson County and that he works approximately 40 hours each week. The father, his wife and their 10-year-old twin daughters reside together in a four-bedroom house; each of the girls, including the parties' child, has her own room, and the father's wife, who works from home, is available to provide child care. The mother resides in a townhouse in the Village of Cazenovia, Madison County with her daughter from another relationship. With respect to her employment history, the mother testified that she has had several temporary positions, which she obtained through a "staffing agency," since August 2013—often working either on a fluctuating schedule/per diem basis or for short periods of time. When the mother is employed, the child attends day care at a facility in Onondaga County—approximately 45 minutes away from the mother's residence. The father testified, and the director of the day care center confirmed, that there were periods of time when the mother placed the parties' child in day care "pretty much from when [the facility] opened to when [the facility] closed," i.e., between 10 and 11 hours each day. When she is not working, the mother, who has no family in the United States, depends upon her parents and church members for financial support.

Turning to the issues of relative fitness and the ability to provide for the child's overall well-being, each party testified as to their interaction with the child, the activities in which they engage during their custodial periods, their attendance at their respective churches and the child's relationship with her half siblings. The father, however, also testified as to (and offered photographs documenting) the numerous occasions upon which the child has been produced for visitations with unexplained or inadequately explained injuries, including large blisters on the child's feet, an extensive rash covering her genital area, two chipped teeth and contusions to various parts of the child's body—prompting the father to file three separate (and ultimately unfounded) reports with Child Protective Services. The father further testified that the mother refuses to cooperate with respect to the child's medical appointments—either failing to inform him of the child's scheduled or urgent doctor visits or providing him with insufficient notice to permit him to attend. Additionally, the father testified as to the mother's general unwillingness to be flexible with visitation arrangements and/or to keep him apprised of issues affecting the child's welfare—citing one occasion when a person unknown to him transported the child to meet him for a scheduled visitation, whereupon the father discovered that the mother was out of the country and had left the child in the care of one of her friends, who, in turn, asked the third party to transport the child for the father's visitation. Although the mother either downplayed these events or presented contrary testimony, this presented a credibility issue for Family Court to resolve (*see Matter of Jeker v Weiss*, 77 AD3d 1069, 1070-1071 [2010]).

Finally, while both parties expressed a willingness to foster a meaningful relationship between the child and the other parent, the mother's representations in this regard were—as Family Court aptly observed—largely belied by her conduct and demeanor toward the father. On this point, the father testified that the mother informed him that he should not "overstep [his] role" in the child's life, stating, "[The mother] has told me many times that she makes the decisions for [the child] and that I don't. And that whatever decision she makes I have to go by."

Upon reviewing the record as a whole and giving due consideration to all of the relevant factors and due deference to Family Court's credibility determinations, we find that Family Court's decision to award sole legal and physical custody to the father and ample visitation to the mother to be supported by a sound and substantial basis in the record. The mother's

remaining arguments, to the extent not specifically discussed, have been examined and found to be lacking in merit.

Peters, P.J., Garry, Rose and Mulvey, JJ., concur. Ordered that the order is affirmed, without costs.