Matter of Romero v Guzman (2018 NY Slip Op 01224)





Matter of Romero v Guzman


2018 NY Slip Op 01224


Decided on February 22, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 22, 2018

522947

[*1]In the Matter of ROBERTO CARLOS ROMERO, Respondent,
v
MELISSA ANN GUZMAN, Appellant. (And Another Related Proceeding.)

Calendar Date: January 12, 2018

Before: Garry, P.J., McCarthy, Egan Jr., Lynch and Pritzker, JJ.


Sandra M. Colatosti, Albany, for appellant.
Roberto Carlos Romero, Oceanside, respondent pro se.
Margaret E. Donnelly, East Greenbush, attorney for the child.


Pritzker, J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Columbia County (Kehn, J.), entered March 31, 2016, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the divorced parents of a child (born in 2011). In September 2012, Family Court (Nichols, J.) granted the mother sole legal and physical custody of the child, with overnight visitation to the father every other weekend. To
facilitate visitation, the mother or another "suitable adult" was directed to transport the child to the father's residence (then in Queens County) or to the paternal grandmother's home (also in Queens County) by 10:00 a.m. on Saturday and to retrieve the child by 7:00 p.m. on Sunday. In December 2014, the father filed a violation petition alleging, among other things, that the mother violated the September 2012 order by failing to abide by the designated drop-off and pick-up locations. The father followed with a modification petition in July 2015 seeking primary physical custody of the child upon allegations that the mother continued to violate the September 2012 order and, additionally, dropped the child off for his visitation in an unkempt manner and failed to execute a release under the Health Insurance Portability and Accountability Act (hereinafter HIPAA), allowing him access to the child's medical records. Following fact-finding [*2]and Lincoln hearings, Family Court (Kehn J.) found the mother to be in willful violation of the prior order, granted the parties joint legal custody, transferred primary physical custody to the father and awarded the mother visitation every other weekend. This appeal by the mother ensued.
We affirm. The father, as the party seeking modification of the September 2012 order, bore the burden of "demonstrat[ing] that a change in circumstances has occurred since the entry thereof . . . to warrant the court undertaking a best interests analysis" (Matter of Emmanuel SS. v Thera SS., 152 AD3d 900, 901 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 905 [2017]; see Matter of David ZZ. v Suzane A., 152 AD3d 880, 881 [2017]; Matter of Smith v McMiller, 149 AD3d 1186, 1187 [2017]). We accord deference to Family Court's credibility determinations, and a decision to change the custodial arrangement will not be disturbed unless it lacks a sound and substantial basis in the record (see Matter of Crystal F. v Ian G., 145 AD3d 1379, 1379 [2016]; Matter of Ryan v Lewis, 135 AD3d 1135, 1137 [2016]).
Here, the September 2012 order required the mother to facilitate visitation by transporting the child from her home in the City of Hudson, Columbia County to the designated drop-off points in Queens County. The father testified that he was seeking primary physical placement due, in part, to the mother's failure to abide by this provision. Because of the mother's work schedule, she often relied on the maternal grandmother to effectuate visitation, with the drop off often occurring at Pennsylvania Station or Grand Central Terminal in New York City. Although the mother testified that the father consented to picking up the child at these locations, there was ample evidence refuting this contention. Moreover, the father testified that, on at least one occasion, the mother refused to bring the child for visitation, forcing him to drive to Hudson to get the child. The record also contains email communications between the parties demonstrating their inability to communicate effectively regarding the visitation provisions of the September 2012 order, as well as testimony revealing their strained relationship. Granting deference to Family Court's credibility determinations, such proof establishes that the September 2012 order is no longer workable and constitutes a change in circumstances necessitating a best interests review (see Matter of Andrea C. v David B., 146 AD3d 1104, 1106 [2017]; Matter of Emmanuel SS. v Thera SS., 132 AD3d at 901).
In undertaking a best interests analysis, we consider such relevant factors as "each parent's ability to furnish and maintain a suitable and stable home environment for the child, past performance, relative fitness, ability to guide and provide for the child's overall well-being and willingness to foster a positive relationship between the child and the other parent" (Matter of David ZZ. v Suzane A., 152 AD3d at 881 [internal quotation marks and citations omitted]). The father testified that the child often comes for visits in an unkempt manner and indicated that the mother failed to ensure that the child's medical needs are being met. Indeed, he testified that, during his visitation, he has "t[aken] it upon himself" to bring the child to a pediatrician to treat various medical issues, including a fracture to the child's foot that occurred while in the mother's care. Additionally, the father explained that the mother refused to sign a HIPAA release for the child's medical records until December 2014, notwithstanding the provision of the September 2012 order mandating that he be provided with such records and his earlier requests for the child's medical information. The evidence also establishes that the mother set up a "Go Fund Me" page in an attempt to raise money for her legal expenses relative to these proceedings, exposing the child on the Internet by listing his name and uploading his picture.
As to the parties' respective work schedules and home environments, although they are both gainfully employed, the mother works every weekend, resulting in difficulty abiding by the visitation schedule, and she has switched jobs on numerous occasions. She also rents out her [*3]home on "Airbnb" and indicated that she has, on occasion, accepted reservations while the child was in her care; however, she clarified that she never booked reservations while the child was scheduled to sleep at her house. Comparatively, a study of the father's home describes his residence as suitable for a child and reveals that he and his wife have stable incomes. Although both parties appear to be fit and loving parents, we agree that shared custody is unworkable due to the distance between their homes — the mother lives in Columbia County and the father now lives in Nassau County — and because the father is better able to provide stability for the child. As such, Family Court's determination that the child's best interests would be served by awarding the father primary physical custody is supported by a sound and substantial basis in the record (see Matter of Emmanuel SS. v Thera SS., 152 AD3d at 902; Matter of Coleman v Millington, 140 AD3d 1245, 1247 [2016]). We also note that Family Court, appropriately recognizing that a shared custodial arrangement is in the child's best interests whenever feasible, included a provision in the order providing that parenting time would be shared equally should the mother elect to move to the child's school district.
The mother next contends that Family Court committed reversible error in considering the child's medical records that were never admitted into evidence. However, any error in this respect was harmless in light of the independent testimonial evidence regarding the child's medical care and the fact that these records were not the sole basis for Family Court's custody determination (see Matter of Spiewak v Ackerman, 88 AD3d 1191, 1192 [2011]).
The mother's contention that Family Court abused its discretion in finding her to be in willful violation of the September 2012 order is without merit inasmuch as the record provides clear and convincing evidence that she was aware that "there was a lawful court order in effect that clearly expressed an unequivocal mandate" (Matter of Paul A. v Shaundell LL., 117 AD3d 1346, 1347-1348 [2014], lv dismissed and denied 24 NY3d 937 [2014]), yet she failed to abide by the designated drop-off and pick-up points and to drop the child off for visitation on certain occasions, impairing the father's ability to spend time with the child (see Matter of Michael M. v Makiko M., 152 AD3d 909, 910 [2017]; Matter of Guild v Clifford, 109 AD3d 1053, 1054 [2013], lv dismissed 22 NY3d 1098 [2014]).
As a final matter, we feel compelled to note that the Lincoln hearing testimony was transcribed together with the fact-finding hearing, apparently due to the fact that there was no break in the proceedings. Inasmuch as a child's testimony at a Lincoln hearing is to remain confidential (see Matter of Heasley v Morse, 144 AD3d 1405, 1408 [2016]; Matter of Gonzalez v Hunter, 137 AD3d 1339, 1342 [2016], lv dismissed and denied 27 NY3d 1061 [2016]), we remind Family Court to take appropriate precautions to fulfill its "paramount obligation" (Matter of Julie E. v David E., 124 AD3d 934, 937 [2015]) to protect the child's right to confidentiality and to shield the inadvertent disclosure of such information, including by taking a break in the proceedings to ensure that the Lincoln hearing is transcribed separately.
Garry, P.J., McCarthy, Egan Jr. and Lynch, JJ., concur.
ORDERED that the order is affirmed, without costs.