Matter of Cooper v Williams (2018 NY Slip Op 03185)





Matter of Cooper v Williams


2018 NY Slip Op 03185


Decided on May 3, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 3, 2018

524149

[*1]In the Matter of JESSICA COOPER, Respondent,
v
DAVID S. WILLIAMS JR., Appellant. (Proceeding No. 1.) (And Another Related Proceeding.)
In the Matter of DAVID S. WILLIAMS JR., Appellant,
v
JESSICA COOPER, Respondent. (Proceeding No. 3.) (And Another Related Proceeding.)

Calendar Date: March 26, 2018

Before: McCarthy, J.P., Devine, Mulvey, Aarons and Pritzker, JJ.


William M. Roth, Utica, for appellant.
Christopher Hammond, Cooperstown, for respondent.
Charles E. Lupia, Syracuse, attorney for the children.
William L. Koslosky, Utica, attorney for the child.


Mulvey, J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Madison County (O'Sullivan, J.), entered August 18, 2016, which, among other things, dismissed petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Jessica Cooper (hereinafter the mother) and David S. Williams Jr. (hereinafter the father) are the parents of a daughter (born in 2001) and twin boys, Joseph and Trent (born in 2004). In 2007, the parties stipulated to an order granting them joint legal custody of the children, with primary physical placement to the mother and specified parenting time to the father. In November 2015, the mother filed a petition seeking sole decision-making authority with respect to the children's medical and health care needs, asserting that the father continually challenged the decisions of the children's health care providers and that his conduct caused the children's pediatrician to discontinue treating them. She also commenced a family offense proceeding alleging harassment by the father. Soon thereafter, the father petitioned for sole custody of the children [FN1] based upon allegations that the mother, among other things, failed to inform him that she placed Joseph on medication to treat his attention deficit hypersensitivity disorder (hereinafter ADHD) and was otherwise an unfit parent, and also filed a violation petition alleging the mother's noncompliance with the custody order. Following a fact-finding hearing and a Lincoln hearing with the twins, Family Court granted the mother's modification petition and dismissed the remaining petitions. The father now appeals, challenging Family Court's resolution of the parties' respective custody modification petitions.
We affirm. A parent seeking to modify an existing custody order "must first demonstrate that a change in circumstances has occurred since the entry thereof to warrant a review of the children's best interests. If this threshold burden is met, the parent must then demonstrate that modification of the underlying order is necessary to ensure the children's continued best interests" (Matter of Fiacco v Fiacco, 158 AD3d 1011, 1012 [2018] [internal citations omitted]; see Matter of Romero v Guzman, 158 AD3d 997, 998 [2018]). "Given the superior position of Family Court to observe and evaluate the testimony, great deference is accorded to its credibility assessments and factual findings, and we will not disturb its custody determination so long as it is supported by a sound and substantial basis in the record" (Matter of Whetsell v Braden, 154 AD3d 1212, 1213 [2017] [citations omitted]; see Matter of Charles AA. v Annie BB., 157 AD3d 1037, 1039 [2018]).
Here, the parties' conceded inability to communicate or engage in cooperative decision-making with regard to medical and health care matters involving the children constitutes a change in circumstances for purposes of satisfying the mother's initial burden on her modification petition (see Matter of Andrea C. v David B., 146 AD3d 1104, 1106 [2017]; Matter of Blagg v Downey, 132 AD3d 1078, 1079 [2015]). Indeed, the inability of these parents to come to a common ground in relation to the medical care of their children was to such a degree that it led the children's life-long pediatrician to no longer accept them as patients. These circumstances overwhelmingly established that joint medical decision-making was no longer workable, thereby triggering an inquiry into which parent is better suited to be possessed of such authority (see Matter of Andrea C. v David B., 146 AD3d at 1106; Matter of Knox v Romano, 137 AD3d 1530, 1531 [2016]).
To that end, the record reflects that the father has a history of challenging and interfering with the medical treatment provided to the children. With respect to the daughter, the [*2]evidence adduced at the fact-finding hearing revealed that the father first began questioning the pediatric care she was receiving nearly a decade earlier, when she was just six years old, and that he had on one occasion refused to afford the daughter privacy during an examination of a highly sensitive nature unless the mother would also agree to leave the room. The credible evidence further established that, after Joseph was diagnosed with ADHD in May 2014, the father contested both the diagnosis itself and the pediatrician's decision to prescribe medication to treat this condition. At the father's insistence, the mother thereafter obtained a second opinion from a licensed psychologist, who confirmed the diagnosis, suggested cognitive therapy as an alternative to medication and recommended that, if an optimal response was not achieved within three to six months, the use of medication should be considered in addition to therapy. Shortly after being taken off of his ADHD medication, Joseph was suspended from school due to behavioral issues and the mother again sought guidance from the children's pediatrician, who recommended that Joseph resume the medication. The father responded by making several harassing telephone calls to the pediatrician challenging the treatment decisions rendered, which prompted the pediatrician to discontinue his treatment of the children.
The father's testimony varied from that of the mother in several material respects, but Family Court found the mother's testimony, including her description of the positive effect of the ADHD medicine on Joseph, to be credible and supported by the medical records. While it is apparent that the father's concerns regarding Joseph's ADHD diagnosis were initially motivated by legitimate concerns, it is equally clear that his continual disputes with the mother and health care providers on these issues, as well as his strong beliefs about the use of prescription medication to treat his son's condition, eventually caused him to lose sight of what is objectively in Joseph's best interest. According the requisite deference to Family Court's assessment of the evidence, as well as the credibility of the witnesses, we find that a sound and substantial basis exists in the record to support the court's determination to award the mother authority to make all medical and health care decisions for the children (see Matter of Imrie v Lyon, 158 AD3d 1018, 1020 [2018]; Matter of Frize v Frize, 266 AD2d 753, 755-756 [1999]).
Turning to the father's petition, we agree with Family Court that he failed to demonstrate a change in circumstances sufficient to warrant a reexamination of any other aspect of the custody arrangement. With regard to the father's claim that the mother failed to involve him in the medical decisions involving Joseph, Family Court found that the credible evidence established that the mother did not conceal Joseph's ADHD diagnosis or treatment, but rather appropriately obtained a second opinion in response to the father's concerns. To the extent that the father and his fiancée testified as to their concerns that the twins were exposed to marihuana use at the mother's home and subjected to physical abuse by the mother's husband, the mother adamantly denied these unsupported allegations, and we find no reason to disturb Family Court's credibility assessments in this regard. Further, while there is no question that the twins had been performing poorly in school, no competent evidence was presented that this was due to the current custodial arrangement or any failings on the part of the mother (see Matter of Heasley v Morse, 144 AD3d 1405, 1406-1407 [2016]; Matter of Bouwens v Bouwens, 86 AD3d 731, 732-733 [2011]; Matter of Bronson v Bronson, 63 AD3d 1205, 1206 [2009]). Based upon our review of the record, and accepting Family Court's credibility assessments, we find a sound and substantial basis supporting the court's determination in this regard (see Matter of Heasley v Morse, 144 AD3d at 1406-1407; Matter of Eller v Eller, 126 AD3d 1242, 1243 [2015]; cf. Matter of Moore v Sloan, 88 AD3d 1193, 1194 [2011]). Even if the father had carried his burden of establishing a change in circumstances, we would find that his requested modification of the prior order would not be in the twins' best interests.
McCarthy, J.P., Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father subsequently withdrew his request for physical custody of the daughter.