■ In the Matter of HUGH FRIZE, Respondent, v KATHLEEN FRIZE, Appellant. [698 NYS2d 764] —Carpinello, J. Appeal from an order of the Family Court of Ulster County (Work, J.), entered December 19, 1997, which, in a proceeding pursuant to Family Court Act article 6, granted petitioner, *inter alia*, sole decision-making authority regarding the education of the parties' child.

Some cases are so unsettling that the law cannot provide a

perfect solution. The instant custody and visitation dispute over the parties' now 12-year-old son, Sean, a multiply-handicapped child who suffers from communication difficulties, poor motor skills and visual deficits, is one of those cases. Both parties have been actively involved in Sean's day-to-day child rearing, although respondent has been much more proactive in his education. It was respondent's refusal to reenroll Sean in public school for the third grade, after having home-schooled him in second grade, which prompted petitioner to commence the instant proceeding for sole custody.

Up until this point, petitioner had always acceded to respondent's decisions about Sean's education, including the decision to teach him at home. According to petitioner, although respondent and Sean had some good days, overall the home-schooling approach was not working (he described it as "a three ring circus"). He felt that it deprived Sean of consistent services and socialization and that Sean was not progressing or happy. These observations, coupled with respondent's refusal to reconsider public school, prompted him to finally "take some action".

On June 15, 1995, the very same day that petitioner approached respondent about his intention to reenroll Sean in public school, respondent's daughter from a prior marriage disclosed to her that petitioner had inappropriate sexual contact with her between the summer of 1988 and the spring of 1991, when she was 13 to 15 years old, respectively. Respondent's daughter was a full-time student at Buffalo State College at the time of this revelation; however, she had reportedly told several friends about it between June 1991 and the spring of 1994. The disclosure of these allegations prompted respondent to remove Sean from the parties' home and file her own petition for sole custody.[1]

Throughout the summer and fall of 1995, numerous Family Court orders were issued and modified with respect to custody and visitation. In November 1995, a court-ordered psychologist, Claude Schleuderer, recommended that the parties have joint legal custody, joint physical custody and that Sean be enrolled in a structured special education program. Schleuderer was aware of the sexual abuse allegations when he made these recommendations but placed no weight on them. He specifically noted, however, that "[w]ere there to be a finding that [petitioner] sexually abused his [stepdaughter]", it may have some impact on his recommendation.

---

1. Although petitioner was arrested and charged with sodomy in the third degree, the charge was later dismissed in the interest of justice by the People.

As of the commencement of the April 1996 combined hearing on the petitions, the parties had joint legal custody of Sean, petitioner had primary physical custody and respondent had custody every other weekend. Both parties were obligated to ensure that Sean attended school and petitioner had the sole authority to implement the recommendations of the New Paltz Central School District. Although an action for divorce had apparently been commenced, the parties still resided together in the marital residence as of the hearing. During petitioner's "custodial time" with Sean, respondent remained in the house and slept on the floor outside his room every night. During her "custodial time", she removed him from the premises.

Extensive testimony was presented on the two most pertinent issues before Family Court, namely, which parent was better suited to control Sean's educational future and whether petitioner had sexually abused his stepdaughter or whether respondent had orchestrated these allegations in an effort to gain custody. To be sure, the latter question was hotly disputed and the parties presented remarkably strong evidence in support of their respective positions. Not unmindful of the suspicious timing of the sexual abuse accusations, Family Court painstakingly analyzed each witness's testimony and the timing of events and ultimately concluded that petitioner did in fact sexually abuse her. Accordingly, the court granted respondent sole legal and physical custody of Sean with the proviso that petitioner have sole decision-making authority with respect to his education. It deferred making a visitation determination pending a second psychological evaluation of the parties by Schleuderer. Ultimately, the court granted petitioner unsupervised visitation, finding this to be in Sean's best interest.[2]

Upon our review of the record, we are unable to conclude that Family Court's determination, which was obviously the result of careful consideration of these issues and based almost exclusively on credibility determinations, is contrary to Sean's best interest, the test upon which custody and visitation assessments are made (*see, Eschbach v Eschbach*, 56 NY2d 167, 171). We address first the court's decision to deprive respondent of control over Sean's education.

In kindergarten and first grade, Sean attended school within the New Paltz Central School District, was assigned a full-time professional aide and received related services, including speech and language therapy and adapted physical education.

---

2. Although the Law Guardian did not feel that the allegations of sexual abuse had been proven, he believes that Family Court's resolution of custody and visitation serves Sean's best interest and should be upheld on appeal.

During these first two years, the other children liked and took an interest in him and he progressively improved, despite his handicaps and limitations. According to Sean's special education teacher, respondent was inflexible in her demands concerning Sean's education during this time. It was difficult to meet her expectations, according to this teacher, and the relationship between respondent and the school district deteriorated. Respondent's continuous dissatisfaction with the school, in conjunction with its denial of her request that Sean attend only on a part-time basis, prompted the home schooling. According to Sean's teacher during the 1995-1996 school year (he finally became reenrolled in public school in December 1995), Sean functioned on the first-grade level in reading and math and benefitted from school. She testified that he progressed in his intellectual development during his time in her classroom, particularly in his ability to communicate. According to this teacher, respondent nevertheless continued to express doubts about the appropriateness of the program for Sean.

Despite her good intentions and unwavering commitment to her son, it is clear to this Court that respondent's role in Sean's education has at times been a hindrance. In her quest to champion her own strong beliefs about Sean's particular educational needs, she has often lost sight of what is objectively in his best interest. Nor did she give any indication during the hearing that she might in any way change her behavior and attitudes in this regard.[3] Given these facts, we agree with Family Court's finding that Sean's best interest will be fostered by divesting her of authority to make educational decisions on his behalf.

Having so determined, we next address whether such authority, as well as unsupervised visitation, was properly vested in petitioner.[4] Although an extremely close call, we cannot disagree with Family Court's factual finding on the issue of whether petitioner sexually abused his stepdaughter since the court had the opportunity to observe the testimony of her, the friends to whom she allegedly reported the abuse long before the instant custody dispute arose, the Assistant District At-

3. Tellingly, when pressed on cross-examination about whether, if given full custody and authority over educational matters, she would abide by a school district's decision that Sean should not advance to the next grade level, respondent responded that she "would probably be stuck with the option of leaving him in the grade that they are saying and then attempting to find a district that might be more open-minded".

4. Although respondent is quite adamant in her contention that petitioner's visitation with Sean should be supervised given the allegations of sexual abuse and his denial of same, it took her 18 months to perfect the instant appeal.

torney who investigated the charges and petitioner who adamantly denied the allegations (*see, Matter of Swift v Swift*, 162 AD2d 784, 785).

Notwithstanding this finding, the record reveals that petitioner has demonstrated the ability to appropriately guide Sean's educational development. He is well versed in all aspects of Sean's education, effectively communicates with his teachers and is capable of working with the education professionals in a reasoned manner to promote Sean's best interest. The record further reveals that Sean is attached to petitioner, the two have a close parent-child relationship and petitioner has never engaged in any inappropriate conduct toward him. Significantly, petitioner underwent two evaluations by Schleuderer, who recommended that supervised visitation was not warranted. This recommendation was based on several mitigating factors, mainly the passage of time from the alleged instances of abuse, Schleuderer's observations that "additional taboos * * * would have to be crossed for [petitioner] to act out sexually against his son" and the "considerable documentation that men who act out sexually against girls are not equally prone to act out sexually against boys". Given these facts, and because no proof was offered that unsupervised visitation would have a detrimental impact on Sean (*see, Matter of Susan GG. v James HH.*, 244 AD2d 731, 734), we cannot conclude that Family Court abused its discretion in awarding unsupervised visitation (*see generally, Matter of Brynn UU. v Erin I.*, 220 AD2d 830).

Crew III, J. P., Spain, Graffeo and Mugglin, JJ., concur. Ordered that the order is affirmed, without costs.