*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 29, 2016                522541
_____

In the Matter of NATASHA
    BEEKEN,
                        Appellant,

        v
                                        MEMORANDUM AND ORDER

LINDA M. FREDENBURG et al.,
                        Respondents.

ATTORNEY FOR THE CHILD,
                        Appellant.
_____

Calendar Date:  November 22, 2016

Before:  Garry, J.P., Egan Jr., Rose, Clark and Mulvey, JJ.

                        _____


        Michelle I. Rosien, Philmont, for Natasha Beeken,
appellant.

        Cheryl Maxwell, Plattsburgh, attorney for the child,
appellant.


                        _____


Egan Jr., J.

        Appeal from an order of the Family Court of Clinton County
(Lawliss, J.), entered January 7, 2016, which dismissed
petitioner's application, in a proceeding pursuant to Family Ct
Act article 6, to modify a prior order of visitation.

        Petitioner (hereinafter the mother) and respondent Dennis
Clukey (hereinafter the father) are the parents of a daughter
(born in 2010).  The parties do not dispute that, in or about
January 2014, respondent Linda M. Fredenburg, the child's
maternal grandmother, was awarded custody of the child based upon

the mother's admitted use of heroin, and the mother was awarded supervised visitation with the child – such visits to be supervised by the grandmother.[1]  Thereafter, in July 2015, the mother commenced this proceeding pro se seeking unsupervised visits with her child.  The matter was scheduled for a hearing in November 2015,[2] at which time the mother and Brittany Locklin, the mother's primary clinician at Clinton County Mental Health and Addiction Service, were the only witnesses to appear and testify.[3]  At the conclusion of that hearing, Family Court dismissed the mother's application finding, among other things, that she had failed to demonstrate the requisite change in circumstances.  This appeal by the mother and the attorney for the child ensued.[4]

---

[1]  The prior custody and visitation order is not included in the record before us.

[2]  The transcript of the parties' September 2015 appearance before Family Court reflects that the attorney for the child would not consent to the mother's application at that time, as the result of which the matter was scheduled for a pretrial conference and eventual hearing.  Family Court's written decision in this matter, however, indicates that the mother's request for unsupervised visitation was unopposed, but that the court insisted upon a hearing "regarding the safety of the subject child."

[3]  The father failed to appear at the hearing, the grandmother appeared but neither opposed the mother's application nor cross-examined the witnesses appearing on her behalf and the attorney for the child supported the mother's request "for three hours of unsupervised visitation three times a week" from 4:00 p.m. to 7:00 p.m. – characterizing such request as both "realistic" from the mother's perspective and "appropriate" for the subject child.

[4]  Neither the grandmother nor the father filed a responding brief on this appeal.

"As the party seeking to modify a prior order of visitation, the [mother] bore the initial burden of showing that a change in circumstances has occurred since the entry thereof that is sufficient to warrant Family Court undertaking a best interests analysis in the first instance; assuming that requirement is met, the [mother] then must show that modification of the prior order is necessary in order to ensure the child's continued best interests" (Matter of Merwin v Merwin, 138 AD3d 1193, 1194 [2016] [citations omitted]; see Matter of Hayes v Hayes, 128 AD3d 1284, 1285 [2015]; Matter of Christina KK. v Kathleen LL., 119 AD3d 1000, 1002 [2014]).  In this regard, "expanded visitation is generally favorable absent proof that such visitation is inimical to the child['s] welfare" (Matter of Sparbanie v Redder, 130 AD3d 1172, 1173 [2015] [internal quotation marks, brackets and citations omitted]).

The mother's modification request stemmed from certain changes that had occurred in both her personal life and the child's schedule since entry of the prior order.  With respect to the child's schedule, the mother explained that, now that the child was enrolled in school, there was a narrow window of opportunity during the school week (60 to 90 minutes each day) when she could enjoy visitations with her daughter.  As to her personal life, the mother testified — without contradiction — that she had completed a detox program, was actively engaged in both group therapy and a community-based support group (Alcoholics Anonymous), the latter of which she attended three or four times each week, had obtained a sponsor (with whom she spoke daily and tried to meet in person twice a month), was participating in a Suboxone treatment program (for which she underwent regular testing to monitor the level of Suboxone in her system), was subject to regular drug testing for illegal substances (all of which came back negative), was successfully maintaining a full-time job and, as of the date of the hearing, had been "clean" for more than one year (see Matter of Angela F. v Gail WW., 113 AD3d 889, 890 [2014]).[5]  Contrary to Family

---

[5]  The mother's testimony on this point was largely corroborated by Locklin (compare Matter of Fish v Fish, 112 AD3d 1161, 1161-1162 [2013]), who testified that "every [drug] screen

Court's findings, such proof is sufficient to establish the requisite change in circumstances, thereby necessitating inquiry into whether the requested modification would be in the child's best interests.

As to her request for unsupervised visitation, the mother explained that the current supervised arrangement did not afford her sufficient time to engage in activities with and/or bond with her daughter. By adopting the proposed visitation schedule (three hours of unsupervised visitation three days each week from 4:00 p.m. to 7:00 p.m.), the mother testified, she would be able to fix dinner for the child and spend more one-on-one time with the child before returning her to the grandmother's residence at a reasonable hour. Although nothing in the record suggests that there was any tension between the mother and the grandmother during the supervised visits, the mother indicated that the child had a tendency to seek out the grandmother if she was present, which — in the mother's view — inhibited her ability to form a closer relationship with her daughter. As noted previously, the grandmother neither testified, called any witnesses nor otherwise opposed the mother's request for unsupervised visitations and, at the close of the hearing, the attorney for the child fully supported the visitation schedule proposed by the mother (cf. Matter of Blaize F. [Christopher F.], 74 AD3d 1454, 1454-1455 [2010]; Matter of Mark P. v Jamie Q., 64 AD3d 921, 923 [2009], lv denied 13 NY3d 706 [2009]).

Although the record indeed would have been enhanced had the mother, who appeared pro se, offered the January 2014 order into evidence and/or testified in greater detail regarding her prior visitation history with her daughter, we nonetheless are

---

[for illegal substances] ha[d] been good," as had the testing undertaken to monitor the level of Suboxone in the mother's system. Locklin detailed the programs that the mother had completed, characterized her as an active participant who was "fully engaged" in the programs — giving "[100%] each session" — and testified that the mother never failed to appear for a scheduled session (although the mother did reschedule one appointment due to a work conflict).

satisfied that the record is sufficiently developed to enable us to conclude that modification of the prior order would be in the child's best interests. Simply put, the mother is fully compliant with her treatment program, is actively engaged in her recovery, has an established support system and has attained and maintained gainful employment. Further, neither the grandmother, who supervised the mother's visits with the child and is the child's custodian, nor the attorney for the child opposed the requested relief, and nothing in the record suggests that unsupervised visits with the child would be detrimental to her welfare. Finally, Family Court's findings – gleaned from its "many years of experience in 'Drug Court'" – as to the implications of the mother's treatment with Suboxone and/or the sufficiency of the drug testing procedures to which she was subject are not supported by a sound and substantial basis in the record (cf. Matter of Kobe D. [Kelli F.], 97 AD3d 947, 949 [2012]; Matter of Blaize F. [Christopher F.], 74 AD3d at 1455), and the court erred in sua sponte taking judicial notice of certain facts after the conclusion of the fact-finding hearing (see Matter of Dakota CC. [Arthur CC.], 78 AD3d 1430, 1431 [2010]; Matter of Justin EE., 153 AD2d 772, 774 [1989], lv denied 75 NY2d 704 [1990]) – an error that we do not deem to be harmless (compare Matter of Dakota CC. [Arthur CC.], 78 AD3d at 1431). Accordingly, Family Court's order is reversed, and the mother's request for unsupervised visitation with her daughter – three days each week from 4:00 p.m. to 7:00 p.m. – is granted.

Garry, J.P., Rose, Clark and Mulvey, JJ., concur.

ORDERED that the order is reversed, on the law, without costs, petition granted and petitioner is awarded visitation with her child as set forth in this Court's decision.


ENTER:

Robert D. Mayberger
Clerk of the Court