Matter of Jill Q. v James R. (2020 NY Slip Op 03700)





Matter of Jill Q. v James R.


2020 NY Slip Op 03700


Decided on July 2, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 2, 2020

527761

[*1]In the Matter of Jill Q., Respondent- Appellant,
v
James R., Appellant- Respondent. (And Another Related Proceeding.)

Calendar Date: May 22, 2020

Before: Garry, P.J., Lynch, Clark, Devine and Reynolds Fitzgerald, JJ.


Michelle I. Rosien, Philmont, for appellant-respondent.
Sandra M. Colatosti, Albany, for respondent-appellant.
Allen E. Stone Jr., Vestal, attorney for the child.



Clark, J.
Cross appeals from an order of the Family Court of Broome County (Young, J.), entered October 1, 2018, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2007). In 2016, a few weeks prior to the child's ninth birthday, the father and the child met for the first time. Thereafter, pursuant to an October 2016 order entered upon consent, the parties shared joint legal custody of the child, with the mother having primary physical custody and the father having parenting time as the parties could agree. The October 2016 order further provided that, should they be unable to agree on the father's parenting time, the father or the mother could petition for a modification of the order without having to demonstrate a change in circumstances.
In April 2017, based on allegations that the child had expressed a desire to stop visiting with the father and that the child was exhibiting signs of physical and emotional distress relating to the father's parenting time, the mother filed a petition seeking to modify the October 2016 custody order to provide the child with the authority to determine when and where the father's parenting time occurred. The father thereafter filed a competing modification petition alleging that the mother was being "unreasonably restrictive" in allowing him parenting time with the child and requesting an order granting him parenting time every other weekend. Following a fact-finding hearing and a Lincoln hearing, Family Court, among other things, granted the father parenting time on the fourth Sunday of each month [FN1] for a period of five hours and such other parenting time as the parties could agree, and directed that the father was to have daily telephone or other electronic contact with the child. In addition, Family Court ordered the father to "engage in and actively participate in the child's counseling with the child's counselor . . . or such other counselor as the parties may agree, until and unless [the child's counselor] or such other counselor determines that such counseling is not appropriate or is no longer necessary." The court further provided that the father could petition the court for an expansion of his parenting time "after [12] months of consistent visitation and engagement with the child in counseling," without having to demonstrate a change in circumstances. The mother and the father appeal.
The mother and the father each assert — albeit for different reasons — that the parenting time provisions in Family Court's order are not supported by a sound and substantial basis in the record. The mother argues that the father's parenting time should be suspended or, in the alternative, that the father's parenting time be limited to therapeutic visitation. In contrast, the father seeks an increase in parenting time on a graduated schedule. The attorney for the child similarly asserts that Family Court's determination regarding the father's parenting time lacks a sound and substantial basis and supports the suspension of parenting time until a mental health professional advises that a resumption of parenting time is safe for the child's mental health.
"As with custody determinations, the guiding principle in fixing a [parenting time] schedule is the best interests of the child" (Matter of Maziejka v Fennelly, 3 AD3d 748, 749 [2004]; accord Matter of Williams v Patinka, 144 AD3d 1432, 1433 [2016]). Because "the best interests of [a child] generally lie with a healthy and meaningful relationship with both parents," parenting time with a noncustodial parent is presumed to be in a child's best interests (Matter of Tina RR. v Dennis RR., 143 AD3d 1195, 1197 [2016]; see Matter of Heather SS. v Ronald SS., 173 AD3d 1271, 1272 [2019]). Accordingly, unless parenting time with the noncustodial parent would be detrimental to the child's welfare, Family Court is required to fashion a parenting time schedule that affords the noncustodial parent frequent and regular access to the child (see Matter of Zaida DD. v Noel EE., 177 AD3d 1220, 1222 [2019]; Matter of Boisvenue v Gamboa, 166 AD3d 1411, 1412 [2018]). Family Court has broad discretion to develop a parenting time schedule in the best interests of the child, and we will not disturb such determination unless it lacks a sound and substantial basis in the record (see Matter of Sabrina B. v Jeffrey B., 179 AD3d 1339, 1340-1341 [2020]; Matter of Zaida DD. v Noel EE., 177 AD3d at 1222).
It was abundantly clear from the hearing testimony that the child was excited to meet her father, but that her mental health progressively declined over the series of months following her introduction to the father. The child's mental health counselor testified that the child initially suffered from an adjustment disorder, which stemmed from her difficulty in adjusting to the father's sudden presence in her life, and that she thereafter developed situational depression, followed by clinical depression. Family Court, however, erroneously precluded the counselor from testifying as to any statements made by the child that formed the basis for her diagnosis and treatment of the child. Such hearsay statements could and should have been permitted under the exception for statements "germane to diagnosis and treatment" (People v Spicola, 16 NY3d 441, 451 [2011], cert denied 565 US 942 [2011]; see People v Ortega, 15 NY3d 610, 618 [2010]). Family Court's erroneous evidentiary ruling unnecessarily restricted the counselor's testimony and, thus, prevented the introduction of evidence that may have been relevant to determining the cause of the child's distress and to fashion parenting time provisions that were addressed to the child's best interests in light of that cause.
There was some evidence that the cause of the child's distress was attributable to having to engage in parenting time with the father at all. However, there was also some evidence to suggest that the child's mental health issues were caused in part by the father's failure to attend weekly ice cream visits that she believed he was required to attend. The child's counselor made repeated references to the father having been required to attend weekly ice cream visits, a requirement that she believed was imposed by court order. The record, however, does not reflect that the weekly ice cream visits were court ordered, and the parties gave conflicting testimony as to whether they had otherwise agreed to such visits. Family Court did not resolve this factual dispute, and, given the testimonial restrictions imposed upon the child's counselor, it remains unclear as to whether the child's mental health issues stemmed in whole or in part from a belief — regardless of whether such belief was founded — that the father was supposed to attend the weekly ice cream visits, but chose not to attend.
Family Court also erred in declining to adjourn the fact-finding hearing to allow the attorney for the child to present testimony from a mental health professional who had evaluated the child when, during the pendency of the fact-finding hearing, the child presented at the Comprehensive Psychiatric Emergency Program in crisis. In so denying the attorney for the child's adjournment request, Family Court ruled that the proffered testimony constituted inadmissible post-petition proof.[FN2] However, such ruling was in error, as the post-petition proof sought to be introduced by the attorney for the child was highly relevant to determining the best interests of the child and could and should have been permitted for that purpose (see Matter of Klee v Schill, 95 AD3d 1599, 1601 n 4 [2012]).
In our view, it was critically important for Family Court to obtain a complete picture as to the child's mental health conditions and to receive evidence regarding the cause of such conditions so that it could determine whether parenting time with the father was detrimental to the child's welfare and, if not, to fashion a parenting time schedule that took into consideration the child's mental health needs, while also promoting the development of a meaningful relationship with the father.[FN3] The court's erroneous evidentiary rulings precluded proof relevant to those very issues and, as such, its determination is not supported by a sound and substantial basis. Accordingly, inasmuch as a sound and substantial basis does not exist in the record to support Family Court's parenting time provisions, we vacate those portions of Family Court's order. Although we are empowered to independently review the record and decide parenting time issues, given the incomplete record and the passage of time, we cannot make any such determination here (see Matter of Rebekah R. v Richard R., 176 AD3d 1340, 1343 [2019]; Matter of Eldad LL. v Dannai MM., 155 AD3d 1336, 1343 [2017]). Therefore, we must remit the matter for a new hearing before a new judge to determine whether parenting time with the father is in the child's best interests and, if so, the type (e.g., therapeutic visitation, supervised visitation, unsupervised visitation, etc.) and amount of parenting time (e.g., a graduated schedule) that would serve the child's best interests.
As a final matter, although we have vacated the provision requiring the father to "engage in and actively participate in the child's counseling with the child's counselor," we nonetheless feel compelled to comment on that ambiguous provision. Setting aside the ambiguity in the wording of the provision, we note that, in crafting the provision, Family Court ignored testimony from the child's counselor that it would be a conflict of interest for her to counsel the father and the child together and that they should instead engage in such counseling with an independent counselor. In the event that the court determines upon remittal that therapeutic visitation is in the child's best interests, it should direct that such therapeutic visitation be conducted by someone other than the child's counselor.
Garry, P.J., Lynch, Devine and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as provided for parenting time; matter remitted to the Family Court of Broome County for further proceedings not inconsistent with this Court's decision before a different judge; and, as so modified, affirmed.



Footnotes

Footnote 1: Family Court provided that, if the father's parenting time could not occur on the Sunday, he was to receive such parenting time on the following Monday.

Footnote 2: Family Court also inappropriately commented that it "already [had] a really great handle on the [child's mental health] diagnosis," that it did not need additional testimony from the mental health professional who had recently seen the child and that it could elicit any relevant updates on the child's mental health from the child directly during the course of the Lincoln hearing. Even if it were appropriate to rely solely on Lincoln hearing testimony to determine the child's updated mental health status, which it is not, we note that Family Court's questioning of the child during the Lincoln hearing was not effective.

Footnote 3: We question whether parenting time once a month for five hours could provide the father with sufficient time to build a meaningful relationship with the child, particularly considering their belated introduction to each other and the child's difficulty in adjusting to the father's presence in her life.