Matter of Benjamin V. v Shantika W. (2022 NY Slip Op 04774)

Matter of Benjamin V. v Shantika W.

2022 NY Slip Op 04774

Decided on July 28, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 28, 2022

534137
[*1]In the Matter of Benjamin V., Appellant,
v
Shantika W., Respondent.

Calendar Date:May 31, 2022

Before:Garry, P.J., Egan Jr., Clark, Aarons and McShan, JJ.

Lindsay H. Kaplan, Kingston, for appellant.
Constantina Hart, Kauneonga Lake, for respondent.
Betty J. Potenza, Highland, attorney for the children.

Clark, J.
Appeal from an order of the Family Court of Ulster County (McGinty, J.), entered September 27, 2021, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of two daughters (born in 2010 and 2012). In early 2017, the mother and the children relocated from Ulster County to Bethlehem, Pennsylvania without the father's consent, prompting the father to file a petition seeking an initial determination on the issues of custody and parenting time. In an order entered in July 2017 upon the parties' consent, the parents were awarded joint legal custody of the children, with primary physical custody to the mother and parenting time to the father every other weekend from Friday at 8:30 p.m. through Sunday at 5:30 p.m., as well as any additional time upon which the parents could agree. In September 2019, based upon concerns over the mother's alcohol abuse, the father commenced this Family Ct Act article 6 modification proceeding seeking sole legal and primary physical custody of the children. In July 2020, while they were in the father's care for an extended period of time over the summer, the children exhibited concerning behavior, which resulted in the father amending his petition [FN1] and moving, by order to show cause, for emergency relief. Given the nature of the father's allegations, Family Court conducted an emergency virtual hearing, after which it temporarily awarded the father sole legal and primary physical custody of the children and provided the mother with four hours of weekly parenting time in New York. Upon receiving temporary full custody, the father voluntarily engaged in preventative services through the Ulster County Department of Social Services, enrolled the children in mental health counseling and began a parenting class.
In September 2021, following a lengthy, virtual fact-finding hearing that concluded in June 2021, Family Court awarded the mother sole legal and primary physical custody of the children, but put numerous conditions in place, including that the mother continue the children in counseling, ensure that the children are not exposed to any acts of domestic violence, avoid intoxication "at any time that she is caring for [the] children" and "require that her local [s]ocial [s]ervices office [in Pennsylvania] open a preventative case for [the] children." As for the father, Family Court granted him six hours of biweekly, supervised parenting time with the children, as well as "access to all of the children's medical, educational records and access to any professionals providing the children with medical, educational, or counseling services." Family Court directed that the father shall pick the children up at the mother's home in Pennsylvania and return the children to the mother's home at the end of his parenting time. The father appeals,[FN2] arguing that [*2]Family Court's determination is not supported by a sound and substantial basis in the record.[FN3]
The parties do not dispute that there has been a change in circumstances since entry of the July 2017 order and, thus, we focus our inquiry on whether Family Court's custody and parenting time determinations serve the best interests of the children (see Matter of Christie BB. v Isaiah CC., 194 AD3d 1130, 1131 [2021]; Matter of Clayton J. v Kay-Lyne K., 185 AD3d 1243, 1244 [2020]). In determining the children's best interests, Family Court must consider, among other factors, "the quality of the parents' respective home environments, the need for stability in the children's lives, each parent's willingness to promote a positive relationship between the children and the other parent and each parent's past performance, relative fitness and ability to provide for the children's intellectual and emotional development and overall well-being" (Matter of Jessica HH. v Sean HH., 196 AD3d 750, 753 [2021] [internal quotation marks, brackets and citations omitted]; see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]). We accord "great deference to Family Court's factual findings and credibility determinations, which will not be disturbed if they have a sound and substantial basis in the record" (Matter of Richard GG. v M. Carolyn GG., 169 AD3d 1169, 1171 [2019]; see Matter of Charity K. v Sultani L., 202 AD3d 1346, 1347-1348 [2022]).
This case presents one of those difficult instances in which Family Court was "faced with the most imperfect of choices" in determining which custodial arrangement served the children's best interests (Hanna v Hanna, 267 AD2d 903, 904 [1999], lv dismissed 94 NY2d 943 [2000]). To start, the parents' palpable animosity toward one another rendered an award of joint legal custody infeasible (see Matter of Jennifer D. v Jeremy E., 172 AD3d 1556, 1557 [2019]; Matter of Grant v Grant, 47 AD3d 1027, 1028 [2008]). Additionally, the evidence credited by Family Court established that there were genuine concerns regarding each parent (see Matter of Gary J. v Colleen L., 288 AD2d 720, 721 [2001]). Indeed, the evidence demonstrated that, among other things, the mother struggled with issues of alcohol abuse, failed to acknowledge or address the children's sexualized behavior and had a history of violating court orders. As for the father, Family Court credited testimony that, more than 30 years ago, during his teenage years, the father repeatedly engaged in sexual acts with his niece when she was under the age of 10.
Notwithstanding the mother's issues, the evidence demonstrated that the mother has been the children's primary caregiver and that she fiercely loves her children. Additionally, as set forth in a letter from a protective services caseworker in Northampton County, Pennsylvania, where the mother resides, the mother's home was clean and did not present any apparent safety concerns. Furthermore, the children have relatives in Pennsylvania[*3], including their maternal half sibling and maternal grandmother, who live nearby and have provided a supportive environment for the children. Finally, although Family Court did not conduct a Lincoln hearing, various witnesses testified to the children's desire to live with the mother.[FN4] Deferring to Family Court's credibility determinations, given the foregoing evidence, there is a sound and substantial basis in the record to support Family Court's determination that an award of sole legal and primary physical custody to the mother was in the best interests of the children (see Matter of Frize v Frize, 266 AD2d 753, 755 [1999]).
We, however, reach an opposite conclusion with respect to Family Court's determination to limit the father to six hours of supervised parenting time in Pennsylvania every other week. In so concluding, we emphasize that "[t]he best interests of the children generally lie with a healthy, meaningful relationship with both parents" (Matter of Williams v Patinka, 144 AD3d 1432, 1433 [2016]; see Matter of Spoor v Carney, 149 AD3d 1209, 1211 [2017]) and that expanded parenting time is generally favored, unless there is proof that such parenting time would be inimical to the welfare of the children (see Matter of Beeken v Fredenburg, 145 AD3d 1394, 1396 [2016]; Matter of Fish v Fish, 112 AD3d 1161, 1162-1163 [2013]).
Here, Family Court's determination to limit the father's parenting time was based entirely on the sexual abuse allegations made against the father by his niece, which occurred nearly 30 years ago. However, there was no evidence establishing that the father had any inappropriate sexual contact with either of the children (see Matter of Johnson v Johnson, 13 AD3d 678, 678-679 [2004]). Nor was there any evidence that the father had engaged in or been accused of engaging in sexual misconduct toward the children's half siblings, both of whom had previously lived with the father for a period of time.
Additionally, none of the parties advocated for supervised parenting time to the father or otherwise opposed a schedule of expanded parenting time (see generally Matter of Beeken v Fredenburg, 145 AD3d at 1397). Indeed, although the mother introduced evidence of the prior sex abuse allegations during her case-in-chief, she argued during summation that Family Court should keep in place the parenting time provisions of the prior July 2017 consent order, which afforded the father parenting time every other weekend from Friday at 8:30 p.m. through Sunday at 5:30 p.m. and at such other times as the parties could agree (see Matter of Carter v James, 4 AD3d 640, 641 [2004]). The record established that the mother knew of the sexual abuse allegations against the father prior to agreeing to the July 2017 consent order. The attorney for the children in Family Court argued for an award of primary physical custody to the father and supervised parenting time to the mother, arguing that there were concerns about the mother's ability [*4]to parent the children and that the children were doing well in the father's care. Interestingly, despite ultimately concluding that the father's parenting time with the children must be supervised, Family Court left the children in the father's unsupervised care over the summer of 2021 — that is, from the conclusion of the fact-finding hearing in June 2021 through the time Family Court entered an order on its decision in September 2021.[FN5]
Further, the record contains evidence of the father's demonstrated ability to provide for the children's well-being. As established by the evidence, after the children exhibited concerning behavior, the father took overt and appropriate steps to address such behavior by, among other things, engaging in preventative services with the Ulster County Department of Social Services, enrolling the children in counseling and establishing boundaries with the children's online activity. Child protective caseworkers testified on the father's behalf and stated that they did not have any concerns regarding the father.
Considering all of the foregoing, we find that the record lacks a sound and substantial basis to support Family Court's determination to provide the father with only six hours of biweekly, supervised parenting time (cf. Matter of Frize v Frize, 266 AD2d at 757; compare Matter of Alan U. v Mandy V., 146 AD3d 1186, 1188 [2017]; Matter of Susan GG. v James HH., 244 AD2d 731, 734 [1997]). We therefore modify Family Court's order by reversing so much thereof as addressed the father's parenting time. Although we are empowered to independently review the record and make determinations regarding parenting time (see generally Matter of Eldad LL. v Dannai MM., 155 AD3d 1336, 1343 [2017]), under the circumstances of this case, we find that the matter must be remitted to Family Court to, upon further proceedings,[FN6] structure a meaningful parenting time schedule in the best interests of the children (see Matter of Jill Q. v James R., 185 AD3d 1106, 1110 [2020]). In so remitting, we encourage Family Court to consider the type of parenting time warranted by the record evidence (e.g., therapeutic visitation, supervised parenting time, unsupervised parenting time, etc.), the amount, duration and location of such parenting time (e.g., a graduated schedule, overnight parenting time in New York, etc.) and any other provisions that would develop and/or promote a healthy and meaningful relationship between the father and the children (e.g., reasonable phone/video contact, written communication, etc.).
Garry, P.J., Egan Jr., Aarons and McShan, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as provided for petitioner's parenting time; matter remitted to the Family Court of Ulster County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The father had previously amended his petition in January 2020.

Footnote 2: The father's notice of appeal purports to appeal from an "order" entered on September 2, 2021. However, Family Court's decision, not order, was entered on that date. An order upon the decision was ultimately entered on September 27, 2021. Inasmuch as an appeal does not lie from a decision (see CPLR 5512 [a]; Family Ct Act § 1112 [a]), we will, in an exercise of our discretion, treat the notice of appeal as validly bringing an appeal from the September 27, 2021 order (see CPLR 5520 [c]; Matter of Angela F. v Gail WW., 146 AD3d 1248, 1250 n 2 [2017]).

Footnote 3: Unlike the attorney for the children in Family Court, who argued for an award of primary physical custody to the father and supervised parenting time to the mother, the attorney for the children on appeal urges this Court to affirm Family Court's determination to award the mother sole legal and primary physical custody, with supervised parenting time to the father.

Footnote 4: Although none of the attorneys, including the attorney for the children, requested a Lincoln hearing and although Family Court is not mandated to conduct one (see Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1168 [2020]; Matter of Jessica B. v Robert B., 104 AD3d 1077, 1078 [2013]), the best practice here would have been for Family Court to conduct a Lincoln hearing.

Footnote 5: Moreover, following testimony from the father's niece in February 2021 regarding the allegations of past sexual abuse, Family Court did not alter its temporary order awarding the father sole legal and primary physical custody of the children.

Footnote 6: Such further proceedings could include, among other things, Lincoln hearings or additional proof from a qualified professional relating to the children's well-being.