Matter of Laura E. v John D. (2023 NY Slip Op 02568)

Matter of Laura E. v John D.

2023 NY Slip Op 02568

Decided on May 11, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 11, 2023

535106 
[*1]In the Matter of Laura E., Respondent,
v
John D., Appellant. (And Another Related Proceeding.)

Calendar Date:March 31, 2023

Before:Egan Jr., J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Law Offices of Gerard V. Amedio, PC, Saratoga Springs (Gerard V. Amedio of counsel), for appellant.
Gordon Tepper & DeCoursey, LLP, Glenville (Jennifer Powers Rutkey of counsel), for respondent.
Marc D. Greenwald, Albany, attorney for the child.
John D. Eggleston, Saratoga Springs, attorney for the child.

Clark, J.
Appeal from an order of the Family Court of Saratoga County (James E. Doern, J.H.O.), entered February 28, 2022, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of one minor child (born in 2009). Pursuant to a 2011 order entered on consent, the parents shared legal and physical custody of the subject child [FN1] and their older brother (hereinafter the brother). In September 2021, the mother filed a petition requesting, as is relevant here, sole legal and physical custody of the child.[FN2] Following a fact-finding hearing, at which the mother and the father proceeded pro se, and a Lincoln hearing with the child, Family Court granted the mother sole legal custody and primary physical custody of the child, while the father was granted parenting time as the parties may mutually agree, with the mother retaining discretion over whether such parenting time required supervision. The court also ordered the father to complete anger management and mental health counseling. The father appeals.[FN3]
Initially, the father does not challenge Family Court's finding that a change in circumstances existed necessitating an inquiry into the child's best interests. In any case, such threshold question is satisfied by the deterioration in the parties' communication and by the breakdown in the relationship between the father and the child, as the child had refused to visit the father's home for the nine months prior to the filing of the mother's petition (see Matter of Richard GG. v M. Carolyn GG., 169 AD3d 1169, 1171 [3d Dept 2019]; Matter of Richard Y. v Vanessa Z., 146 AD3d 1050, 1051 [3d Dept 2017]). As such, we focus our inquiry on whether Family Court's custody and parenting time determinations serve the bests interests of the child. "In making a best interests determination, Family Court must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Joshua PP. v Danielle PP., 205 AD3d 1153, 1155 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 901 [2022]; see Matter of Benjamin V. v Shantika W., 207 AD3d 1017, 1018 [3d Dept 2022]). Family Court's factual findings and credibility determinations are entitled to great deference and "will not be disturbed if they have a sound and substantial basis in the record" (Matter of Richard GG. v M. Carolyn GG., 169 AD3d at 1171).
The father contends that Family Court improperly punished him for his religious views, and that the resulting order is not supported by [*2]a sound and substantial basis.[FN4] Our review of the record reveals no instances where Family Court took an improper stance regarding the father's religious views. Rather, the court appropriately focused its inquiry on the best interests of the child. Through testimony, the father made numerous troubling admissions, including that he got into "many, many physical altercations" with the brother. The evidence established that the father was quick to lose his temper, and his aggressive tendencies caused the child to fear spending time alone with him. The mother also testified that the father blamed the child for the paternal grandmother's death.
The child's gender identity — and their chosen name and preferred pronouns — were also a point of major contention between the parties. The father explained that addressing the child by their chosen name or preferred pronouns was contrary to his Catholic faith. Although the father initially agreed to engage in family counseling with the child and the mother, the counselor testified that this was short-lived. During the third family counseling session, the father took issue with the counselor addressing the child with the child's preferred pronouns (they/them), which led to an argument between the father and the child. The father then stormed out of the family session. The counselor continued to treat the child and revealed that the child often reported distress at the father's refusal to respect the child's chosen name and preferred pronouns. The counselor further testified regarding a study that showed that suicide rates [FN5] among transgender and gender nonbinary people are halved if the individual feels that their pronouns are respected in their daily lives.
The record evidence further showed that the father often took a rigid approach to parenting. For example, even though the child had anxieties about mass gatherings while COVID-19 infections rose, the father felt wronged by the child's refusal to attend Catholic mass in person for Christmas 2020. As a result, he prohibited the child from spending time with him or his family for that Christmas. He asserted that such discipline was necessary to punish the child for their misbehavior and failed to acknowledge how this made the child feel rejected. Rather than attempting to nurture a positive relationship with the child, the father repeatedly asserted that the child "needs to obey," and his complaints about the mother focused on her refusal to take a similar stance. The mother, for her part, supported the child, and she attempted to encourage a positive relationship between the father and the child. To that end, the mother attempted to facilitate meetings between them, but those meetings ended with the child and the father arguing.
A plethora of emails between the father and the mother also reveal an acrimonious relationship. Although the parties were, at times, able to communicate, the father often hyper-focused on perceived slights (i.e., Christmas 2020) rather [*3]than trying to coparent for the child's well-being. The father's stance of non-compromise extended to him refusing to consent to certain recommended orthodontic care for the child. Although the father testified that the mother refused to schedule an orthodontic appointment at a time he could attend, he did not refute the mother's testimony that she provided him with notice of such appointment approximately 10 weeks in advance. The record further demonstrates that the mother's efforts to communicate were hindered, and at times thwarted, by the father's combative nature and his constant demands for obedience by the child. Under these circumstances, joint legal custody was untenable, and granting the mother sole legal custody of the child was supported by a sound and substantial basis in the record (see Matter of Brenna EE. v Andrew DD., 214 AD3d 1039, 1040-1041 [3d Dept 2023]; Matter of Brett J. v Julie K., 209 AD3d 1141, 1143-1144 [3d Dept 2022]). However, Family Court erred when it did not make provisions for the father to have independent access to the child's medical and educational records (see Matter of Brenna EE. v Andrew DD., 214 AD3d at 1041).
Turning to physical custody, and deferring to Family Court's findings regarding the child's fear of the father's aggressive demeanor, the mother's attempts to nurture a positive relationship between the father and the child and the mother's superior ability to provide for the child's mental health and overall well-being, its decision to grant the mother primary physical custody is supported by a sound and substantial basis in the record (see Matter of Tiffany W. v James X., 196 AD3d 787, 792 [3d Dept 2021]; Matter of Heather U. v Janice V., 152 AD3d 836, 839-840 [3d Dept 2017]). However, in making the father's parenting time contingent on the mother's agreement, Family Court improperly delegated its authority to the mother to determine what, if any, parenting time the father should have (see Matter of Heather SS. v Ronald SS., 173 AD3d 1271, 1273 [3d Dept 2019]; Matter of Taylor v Jackson, 95 AD3d 1604, 1605 [3d Dept 2012]). Due to the sensitive circumstances presented and the passage of time, we remit this matter to Family Court to determine whether parenting time with the father is appropriate or whether it is detrimental to the child's welfare (see Matter of Jessica HH. v Sean HH., 196 AD3d 750, 755-756 [3d Dept 2021]; Matter of Jill Q. v James R., 185 AD3d 1106, 1110 [3d Dept 2020]). If the court finds that parenting time is not detrimental, then, keeping the child's best interests front and center, the court should "consider the type of parenting time warranted by the record evidence (e.g., therapeutic visitation, supervised parenting time, unsupervised parenting time, etc.), the amount, duration and location of such parenting time (e.g., a graduated schedule, overnight parenting . . . , etc.) and any other provisions that would develop and/or promote a healthy and meaningful relationship between [*4]the father and the child[] (e.g., reasonable phone/video contact, written communication, etc.)" (Matter of Benjamin V. v Shantika W., 207 AD3d at 1021-1022).
Furthermore, the father cannot, for the first time on appeal, complain about Family Court's failure to order a forensic psychological evaluation of the family, as he opposed such relief throughout the hearing (see Matter of Adam MM. v Toni NN., 124 AD3d 955, 957 [3d Dept 2015]; Matter of Kubista v Kubista, 11 AD3d 743, 745 [3d Dept 2004]). We also reject the father's argument that Family Court improperly conditioned the father's parenting time upon his completion of anger management and mental health counseling.[FN6] The court was permitted to include these directives, which are supported by a sound and substantial basis in the record, in order to provide a path toward improving the father's relationship with the child (see Matter of Leonard v Pasternack-Walton, 80 AD3d 1081, 1082 [3d Dept 2011]; Matter of Gadomski v Gadomski, 256 AD2d 675, 677-678 [3d Dept 1998]; compare Matter of Alisia M. [Sean M.], 110 AD3d 1186, 1188 [3d Dept 2013]). The father's remaining contentions, to the extent not expressly addressed herein, have been reviewed and lack merit.
Egan Jr., J.P., Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as relates to the father's parenting time with the subject child and by specifying that the father shall have independent access to the child's medical and educational records; matter remitted to the Family Court of Saratoga County for further proceedings not inconsistent with this Court's decision, and, pending said proceedings, the father shall continue to have a minimum of 30 minutes of Skype/FaceTime/video time with the child at least twice per week; and, as so modified, affirmed.

Footnotes

Footnote 1: The subject child identifies as male and uses the gender-neutral pronouns they/them.

Footnote 2: In February 2021, the father filed a modification petition seeking sole custody of the brother, which petition was tried jointly with the mother's petition seeking sole custody of the subject child. As the brother has reached the age of majority, any argument regarding that portion of the order is now moot (see Matter of Cokely v Crocker, 157 AD3d 1033, 1034 [3d Dept 2018]).

Footnote 3: Upon his appeal, the father moved for a stay of Family Court's order, which request was denied. However, pending resolution of the appeal, we granted the father "a minimum of 30 minutes of Skype/FaceTime/video visitation with [the child] at least twice per week" (2022 NY Slip Op 65161[U]).

Footnote 4: The attorney for the child supports affirmance, arguing that Family Court properly considered the father's behavior toward the child and fashioned an order that is in the child's best interests.

Footnote 5: On two separate occasions in 2021, the child was hospitalized after reporting that they wanted to commit suicide.

Footnote 6: To the extent that the father posits that the order allowed the mother to determine whether the father's parenting time was premised on his engagement of these counseling programs, we disagree. Regardless, our reversal of the parenting time provisions renders such argument academic.