Matter of Steven OO. v Amber PP. (2024 NY Slip Op 02353)

Matter of Steven OO. v Amber PP.

2024 NY Slip Op 02353

Decided on May 2, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 2, 2024

CV-22-2221
[*1]In the Matter of Steven OO., Respondent,
v
Amber PP., Appellant. (And Another Related Proceeding.)

Calendar Date:March 26, 2024

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Lisa A. Burgess, Indian Lake, for appellant.
Kenneth M. Tuccillo, Hastings on Hudson, for respondent.
Jessica Hugabone Vinson, Delmar, attorney for the children.

Clark, J.P.
Appeal from an order of the Family Court of Washington County (Adam D. Michelini, J.), entered November 17, 2022, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of two children (born in 2011 and 2014). In 2017, the parties agreed to share legal custody and to a parenting schedule granting each parent approximately the same amount of parenting time, and such terms were reduced to a custody order. The mother filed an enforcement petition in January 2022, alleging, among other things, that the father had not been allowing her to exercise parenting time in accordance with the prior order. In March 2022, the father filed a petition to modify the prior order, alleging, among other things, that the mother's home was unsafe and unsanitary and that, despite an order of protection requiring the maternal grandfather to stay away from the older child, the mother had continued to allow him to have contact with that child. Following a fact-finding hearing in October 2022, Family Court found that the mother had continued to allow the grandfather access to the children, and that this change in circumstances necessitated a modification of the prior order, resulting in a reduction of the mother's parenting time and restricting it to occur in a public place. As to the mother's petition, the court found that the father had interfered with the mother's parenting time as set out in the prior order but declined to impose a penalty, as his behavior was aimed at protecting the children. The order also directed both parents to keep the children away from the grandfather. The mother appeals.
The crux of the mother's argument on appeal is that the parenting schedule interferes with her ability to maintain a meaningful relationship with the children. Notably, the mother poses no challenge to Family Court's determination that a change in circumstances was established, thus abandoning any such argument (see Matter of Raychelle J. v Kendell K., 121 AD3d 1206, 1207 n 2 [3d Dept 2014]).[FN1] Nevertheless, the record supports that determination. In 2019, the grandfather pleaded guilty to a reduced charge of endangering the welfare of a child in satisfaction of pending criminal charges alleging that he had committed a sexual offense against the older child; an order of protection was issued requiring the grandfather to stay away from the older child. According to the father's uncontroverted testimony, thereafter, the mother attempted to effectuate a custodial exchange while accompanied by the grandfather. Further, the father said that, on several occasions, he had seen the grandfather at the mother's home, where the children's two maternal half siblings resided; the stepmother of one of those half siblings testified that she observed the grandfather in the mother's home a few weeks before the [*2]hearing. Deferring to Family Court's credibility determinations, evidence of the mother's failure to recognize the harm posed by the grandfather established the requisite change in circumstances warranting an inquiry into whether a modification of the existing custody order would serve the best interests of the children (see Matter of Jehrica K. v Erin J., 223 AD3d 1079, 1081 [3d Dept 2024]; Matter of Brandon HH. v Megan GG., 214 AD3d 1036, 1038 [3d Dept 2023]).
"In determining the children's best interests, Family Court must consider, among other factors, the quality of the parents' respective home environments, the need for stability in the children's lives, each parent's willingness to promote a positive relationship between the children and the other parent and each parent's past performance, relative fitness and ability to provide for the children's intellectual and emotional development and overall well-being" (Matter of Brett J. v Julie K., 209 AD3d 1141, 1143 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Jessica HH. v Sean HH., 196 AD3d 750, 753 [3d Dept 2021]). "[T]he best interests of the children generally lie with a healthy, meaningful relationship with both parents and . . . expanded parenting time is generally favored, unless there is proof that such parenting time would be inimical to the welfare of the children" (Matter of Benjamin V. v Shantika W., 207 AD3d 1017, 1020 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Henry CC. v Antoinette DD., 222 AD3d 1231, 1234 [3d Dept 2023]). Ultimately, Family Court is tasked with crafting a schedule of parenting time that serves the best interests of the children, and such determination will only be disturbed if it lacks a sound and substantial basis in the record (see Matter of Evelyn EE. v Jody CC., 222 AD3d 1294, 1298 [3d Dept 2023]; Matter of Henry CC. v Antoinette DD., 222 AD3d at 1234).
The mother testified that the Washington County Department of Social Services (hereinafter DSS) inspected her home in the summer of 2022, found that her home was in an unsafe and unsanitary condition and filed a neglect petition against her.[FN2] The mother admitted to a number of those conditions. However, she asserted that, with the assistance of a DSS caseworker, all but one of the safety hazards had been fixed, with the last fix waiting on a grant or loan. As to the cleanliness, she explained that a total of 14 people had been residing in her home: herself, her fiancÉ, the two half siblings, the maternal grandmother, the mother's brother, his girlfriend and their seven children. A few weeks before the hearing, the brother's girlfriend and seven children moved out, allowing the mother to maintain the home in a much cleaner condition. The father expressed doubt that the mother's home would remain safe and sanitary, citing two incidents around late 2017 and 2018 where the children tripped over clutter at the mother's home, and he submitted into [*3]evidence photographs of the resulting injuries.
The parties agreed that, following the issuance of the prior order, they followed the parenting schedule set therein. However, the father admitted that, upon learning that the grandfather had abused the older child, around 2018 or 2019, he began preventing the mother from taking the children to her home. Instead, he only allowed the mother to spend time with the children at his home or at the home of his family members. The record also reflects that the parties have difficulty communicating. According to the mother, the father often disregarded her communications to arrange for parenting time, opting to have his wife make such arrangements; the father admitted that his wife would assist him but denied ignoring the mother's messages.
The record on appeal supports Family Court's concerns that the mother did not appreciate the risk posed by exposing the children to the grandfather. The mother's home was also in a deplorable state but, as the court recognized, she was actively engaged in making the home a safe and sanitary space. These concerns provided a sound and substantial basis to support Family Court's determination that the mother's parenting time should be restricted to occur in a public place (see Matter of Darlene A. v Carl C., 222 AD3d 1276, 1278 [3d Dept 2023]; Matter of Tara DD. v Seth CC., 214 AD3d 1031, 1035 [3d Dept 2023]). However, even recognizing the broad discretion given to Family Court in crafting a parenting schedule and deferring to its credibility determinations, the record on appeal does not support the schedule herein, as it is devoid of any evidence that the mother's own behavior toward or around the children was inappropriate. Taking into account that the mother's parenting time would occur outside her home and that the parents were expressly directed to keep the grandfather away from the children, there is simply no basis for drastically reducing the mother's parenting time from 50/50 to a weekly two-hour dinner and a biweekly seven-hour outing.[FN3] Due to the lack of evidence that granting the mother more parenting time would be inimical to the welfare of the children, we agree with the mother and the attorney for the children that Family Court's parenting time schedule fails to serve the best interests of the children (see Matter of Benjamin V. v Shantika W., 207 AD3d at 1020-1021; Matter of Beeken v Fredenburg, 145 AD3d 1394, 1397 [3d Dept 2016]; compare Matter of Henry CC. v Antoinette DD., 222 AD3d at 1584-1585; Matter of Nicole J. v Joshua J., 206 AD3d 1186, 1188-1189 [3d Dept 2022]), requiring its reversal.
Although our fact-finding powers are as broad as those of Family Court (see Matter of Megan NN. v Michael NN., 210 AD3d 1357, 1361 [3d Dept 2022]), given the passage of time and posthearing developments,[FN4] we deem it prudent to remit the matter to Family Court for a new hearing to determine an appropriate schedule of parenting time, along with the parameters and limitations [*4]around such schedule, which affords both parents regular and meaningful parenting time, accounts for the parties' current circumstances and serves the best interests of the children (see Matter of Chad KK. v Jennifer LL., 219 AD3d 1581, 1585 [3d Dept 2023]; Matter of Virginia HH. v Elijah II., 211 AD3d 1201, 1205 [3d Dept 2022]). Additionally, although not raised by the parties on appeal, the record lacks any articulated reason for Family Court's decision not to conduct a Lincoln hearing with the children. Because "the fundamental purpose of a Lincoln hearing is to ascertain a child's preferences and concerns," holding such a hearing with the subject children, who are now 12 and 9 years old, may provide Family Court with important information that would assist it in crafting an appropriate schedule of parenting time (Matter of Christine TT. v Dino UU., 143 AD3d 1065, 1068 [3d Dept 2016]; see Matter of Samantha WW. v Malek XX., 217 AD3d 1081, 1083 [3d Dept 2023]).
Turning to the mother's violation petition, the mother and the attorney for the children argue that Family Court erred in declining to impose a punishment upon the father. Family Court found that the father violated the terms of the prior order by interfering with the mother's parenting time and cautioned him against resorting to self-help in the future. Nevertheless, given the father's explanation that his conduct was aimed at protecting the children from the danger posed by the grandfather, Family Court implicitly found that the father's violation was not willful (see e.g. Matter of Joseph XX. v Jah-Rai YY., ___ AD3d ___, ___, 2024 NY Slip Op 00950, *2 [3d Dept 2024]; Matter of Nelson UU. v Carmen VV., 202 AD3d 1414, 1416 [3d Dept 2022]; Matter of Jemar H. v Nevada I., 182 AD3d 805, 808 [3d Dept 2020]). Consequently, Family Court declined to impose a sanction and, deferring to its credibility determinations, we find this was a provident exercise of its discretion (see Matter of Tamika B. v Pamela C., 187 AD3d 1332, 1338 [3d Dept 2020]; Matter of Jemar H. v Nevada I., 182 AD3d at 808; see also Matter of Harley K. v Brittany J., 189 AD3d 1738, 1740 [3d Dept 2020]).[FN5]
The parties' remaining contentions have been examined and lack merit.
Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ., concur.
ORDERED that the order is modified, on the facts and the law, without costs, by reversing the schedule of parenting time and the parameters and limitations around said schedule; matter remitted to the Family Court of Washington County for further proceedings not inconsistent with this Court's decision; and, pending said proceedings, the terms of said order shall remain in effect on a temporary basis; and, as so modified, affirmed.

Footnotes

Footnote 1: In addition to joining the mother's contentions about her parenting time, the attorney for the children also argues that the father failed to meet his burden of establishing that a change in circumstances existed which necessitated an inquiry into the best interests of the children.

Footnote 2: The neglect petition pertained to the half siblings, not the subject children.

Footnote 3: We recognize that, because the mother's parenting time was required to occur outside her home, a schedule of 50/50 parenting time was not feasible.

Footnote 4: The father and the attorney for the children have informed us that the grandfather passed away during the pendency of this appeal. Although we cannot consider such fact on appeal (see Matter of Maranda WW. v Michael XX., 219 AD3d 1590, 1593-1594 [3d Dept 2023]), the parties will have the opportunity to proffer such evidence upon remittal.

Footnote 5: In addition to the absence of an express finding on willfulness, the order on appeal is devoid of a decretal term disposing of the mother's violation petition. Under the circumstances herein, we treat the order on appeal as having implicitly dismissed the mother's petition (see e.g. Noble v Slavin, 150 AD3d 1345, 1346-1348 [3d Dept 2017]; Lakeside Realty LLC v County of Sullivan, 140 AD3d 1450, 1452 n 2 [3d Dept 2016], lv denied 28 NY3d 905 [2016]; Gauthier v Countryway Ins. Co., 100 AD3d 1062, 1062-1063 [3d Dept 2012]).